# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### NORTHERN DIVISION
### AT COVINGTON

**CIVIL ACTION NO. 09-115-DLB**

**VALERIE BRADFORD, ET AL.**                                    **PLAINTIFFS**

**vs.**                          **MEMORANDUM OPINION AND ORDER**

**BRACKEN COUNTY, ET AL.**                                    **DEFENDANTS**

* * * * * * * * * * * * * * *

Plaintiffs initiated this 42 U.S.C. § 1983 action against Bracken and Campbell counties and multiple police officers after Robert Bradford was killed in a shooting incident in Bracken County, Kentucky on May 31, 2009. Plaintiffs assert ten state and federal claims against Defendants, including constitutional violations, battery, negligence, excessive force, and loss of consortium. The Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

This matter is before the Court on Motions to Dismiss by Defendant Kentucky State Police officers Beighle (Docs. # 50, 53), Robb (Docs. # 50, 53), and McDonald (Doc. # 57). The motions have been fully briefed (Docs. # 61, 62, 64) and are ripe for review. For the reasons that follow, the Court will (1) **grant** Beighle and Robb's motions in part; (2) **deny** Beighle and Robb's motions in part; and (3) **grant** McDonald's motion.

## I.    BACKGROUND

Robert Bradford was shot and killed near his house on Eden Ridge Road in Bracken County, Kentucky on the night of May 31, 2009. At approximately 7 p.m. that evening,

deputy Herb Rumford was dispatched to respond to a domestic disturbance near the intersection of Eden Ridge Road and the AA highway in Bracken County. Upon arrival, he spoke with Valerie Bradford, Robert Bradford's wife, who expressed concern that her husband might hurt himself. A Defendant State Trooper arrived on the scene, and he and Rumford instructed Valerie to stay put while the two drove down Eden Ridge Road toward the Bradford residence. Thereafter, Valerie Bradford received a call on her cell phone from unknown law enforcement personnel requesting that she proceed to a public place. Valerie then drove to Lauren and Mark Elliot's resident.

Upon arrival at the Bradford residence, Rumford and the Trooper allegedly found Robert Bradford holding a rifle. The facts, although not entirely clear, allege that one or more of the Defendant State Troopers shot at Bradford, causing him to flee to his business garage located on his property. Bradford refused to surrender to Rumford and the Trooper, who then called for backup. Allegedly, the Bradfords' neighbors, Ann and Wayne Bice, heard the Trooper fire at Bradford. Later that evening, the Bices exited their home after hearing what they thought was either a police or ambulance radio. As the two approached the noise source, they heard Bradford's name called over a megaphone, but reported that it was difficult to make out what was being said. The two further witnessed an unattended police cruiser near the Bradfords' driveway, and several police officers stationed outside Bradford's business garage.

At about 9:30 p.m., Bradford exited the garage in his front-end loader, driving down his driveway in an attempt to escape. As Bradford approached the officers stationed near the garage, he slowed down, the loader jogged a few times, cut to the left, and proceeded on to Eden Ridge. Bradford continued down Eden Ridge until he reached the empty police

2

cruiser just short of his residential driveway. At this point, Bradford went off the road, around the police cruiser without making contact, and then re-entered Eden Ridge Road and began driving back toward the police officers. During this time, the Bices had started walking home when they reportedly heard at least twenty shots fired in less than a minute. Bradford was struck and lost control of his front-loader. The Complaint alleges that Bradford did not fire his weapon on the evening of May 31, 2009.

At the sound of the shots, the Bices headed back toward the Bradford residence and saw an unknown person in the cab of the front-loader with a flashlight. The loader was turned off and Bradford was removed on a gurney. The Amended Complaint alleges that Defendants shot Bradford multiple times in the chest and that he died from his injuries within minutes. A visibly shaken police officer allegedly approached the Bices and said "[i]f anyone asked you what you saw here, don't tell them anything, but have them call the state patrol's office." (Doc. # 26 ¶ 34). During the standoff, several of Bradford's friends and family tried to enter the property and talk to him, but were stopped by Defendants and told they could not proceed. Deputy Rumford told Larry Dusing, one of Bradford's friends, that "if you go down there, you[']r[e] on his side, not ours." (Doc. # 26 ¶ 38). They were, however, allowed to call Bradford on his cell phone.

Plaintiff Valerie Bradford was named administratrix of Bradford's estate on June 23, 2009. Plaintiffs Valerie Bradford and N.B. filed their original Complaint on July 20, 2009. (Doc. # 1). The Court subsequently dismissed the Bracken and Campbell County Sheriffs, and selected claims on February 1, 2010. (Doc. # 19). As permitted by the Court's Scheduling Order (Doc. # 23), on June 1, 2010, Plaintiffs filed a Motion for Leave to File

an Amended Complaint and attached a proposed First Amended Complaint. (Doc. 24).[1] The Court granted the motion on June 10, 2010 and Plaintiffs filed their First Amended Complaint the same day. (Docs. # 25, 26). Though the original Complaint named several Kentucky State Police officers and "Kentucky State Police Officers, Names Unknown," it was the First Amended Complaint that named, for the first time, Defendants Beighle, McDonald, Robb, and Jaskowiak. (Doc. # 26).

On August 27, 2010 Plaintiffs sent requests for waiver of service to the four Defendants added in the First Amended Complaint: Beighle, McDonald, Robb, and Jaskowiak. (Docs. # 37, 38, 39, 40). All four requests for waiver of service were returned unexecuted, as indicated in docket entries on October 1, 2010. (Docs. # 41, 42, 43, 44). Summonses were issued to the four Defendants the same day. (Doc. # 47). Defendants Beighle, McDonald, and Robb subsequently moved to dismiss on several grounds. (Docs. # 50, 53, 57).

## II. ANALYSIS

### A. Motion to Dismiss Standard

A motion to dismiss may only be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle plaintiff to relief. *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 544 (6th Cir. 1991) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). For purposes of a motion to dismiss, "all allegations in the complaint must be taken as true and construed in a light most favorable to the nonmovant."

---

[1] Compliance with the Court's deadline for amending the original Complaint did not toll the applicable statute of limitations. *Burdine v. Kaiser,* No. 3:09-cv-1026, 2010 WL 2606257, at *2 n.1 (N.D.Ohio June 25, 2010) (quoting *Clark v. Hawkins,* 41 F.3d 664, 664 n.8 (5th Cir. 1994) for the proposition that there is "no authority to support the conclusion that compliance with a scheduling order immunizes an amendment against a statute of limitations defense").

*Id.* (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)). While the Court must accept the plaintiff's factual allegations as true, it need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

### B.    Plaintiff Valerie Bradford's and the Estate's State Law Claims Against Defendants Beighle, McDonald, and Robb are Time Barred

Defendants argue that Plaintiffs' state law claims are time barred because they were not commenced within the applicable statute of limitations. Plaintiffs respond that regardless of whether they timely commenced their claims, their Amended Complaint relates back to their original Complaint, which was timely filed. The Court takes these arguments in turn.

All Plaintiffs' state claims are subject to the one-year statute of limitations found in KRS § 413.140. Though Plaintiffs appear to concede this point—or, at least, do not argue it—it requires explanation. The first category of claims, Counts One (battery), Three (negligence), and Four (excessive force), are straightforward personal injury claims that fall under KRS § 413.140(1)(a)'s one-year statute of limitations. Count Six, which alleges loss of consortium on behalf of Valerie Bradford, decedent's wife, is also subject to KRS § 413.140(1)(a)'s one-year statute of limitations under *Floyd v. Gray*, 657 S.W.2d 936, 938 (Ky. 1983).

Count Seven, which alleges loss of parental consortium on behalf of N.B., decedent's minor child, is less clear, but also subject to a KRS § 413.140(a)(1)'s one-year statute of limitations. The Kentucky Supreme Court first recognized a minor child's claim for loss of parental consortium in *Giuliani v. Guiler, M.D.*, 951 S.W.2d 318, 319, 323 (Ky.

1997) as a natural evolution of the common law.  While the Kentucky Supreme Court has not specifically addressed the statute of limitations for loss of parental consortium claims, a one-year statute of limitations is consistent with Kentucky law holding that the personal injury statute of limitations (KRS § 413.140(a)(1)) "appl[ies] to injuries causing the death of the person, for which his widow or child may sue."  *Irwin v. Smith*, 150 S.W. 22, 24 (Ky.App. 1912).  Neither independent research nor the parties' briefs having uncovered authority or argument to the contrary, the Court finds all Plaintiffs' state law claims subject to KRS § 413.140(1)(a)'s one-year statute of limitations.

### 1.    Under Kentucky Law, the Action Commenced When Summonses Were Issued

Kentucky Revised Statute § 413.140(1) requires a personal injury claim to be "*commenced* within one (1) year after the cause of action accrued."  Under Federal Rule of Civil Procedure (Rule) 3, an action "is commenced by filing a complaint with the court."  By contrast, Kentucky law provides that an action is commenced "on the date of the first summons or process issued in good faith from the court having jurisdiction of the cause of action."  KRS § 413.250.  Correspondingly, Kentucky Rule of Civil Procedure (CR) 3 provides that "[a] civil action is commenced by the filing of a complaint with the court and the issuance of a summons or warning order thereon in good faith."  Recently, a Kentucky court confirmed that under Kentucky law, "the statute of limitations runs until a summons is actually issued."  *Steadman v. Gentry*, 314 S.W.3d 760, 762 (Ky.App. 2010) (quoting *Simpson v. Antrobus*, 86 S.W.2d 544, 546 (Ky. 1935)).

Defendants contend that Kentucky law determines when the supplemental state law claims commenced for statute of limitations purposes.  (Docs. # 53 at 2; 57-1 at 3).  Though

potentially fatal to their state law claims, Plaintiffs appear to concede that Kentucky law applies by citing KRS § 413.250 and stating that "[g]enerally, under Kentucky law, an action shall be deemed to commence on the date of the first summons or process issued in good faith from the court having jurisdiction of the cause of action." (Doc. # 61 at 3). Plaintiffs do not contend that this rule does not apply here, instead arguing that their First Amended Complaint relates back to their original Complaint, filed before the statute of limitations expired. Before considering this argument, the Court must address why Kentucky law—rather than federal law—determines the commencement of Plaintiffs' supplemental state law claims.

In *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-53 (1980), the Supreme Court held that "state service requirements which are an integral part of the state statute of limitations should control in an action based on state law which is filed in federal court under diversity jurisdiction." Though the present case is in federal court under federal question jurisdiction, "the rationale of *Walker* does not change 'solely because of the fortuity' that [the plaintiff] pleaded a federal claim along with state claims." *Appletree Square I, Ltd. P'ship v. W.R. Grace & Co.*, 29 F.3d 1283, 1286 (8th Cir. 1994) (quoting *Walker*, 446 U.S. at 753)). Stated differently, whether a state law claim is in federal court on diversity or supplemental jurisdiction, state law determines when the claim commenced because "it is the source of the right sued upon, and not the ground on which federal jurisdiction is founded, which determines the governing law." *Id.* (quoting *Maternally Yours, Inc. v. Your Maternity Shop, Inc.* 234 F.2d 538, 540 n.1 (2nd Cir. 1956)). Consequently, in both *Appletree Square I*, 29 F.3d at 1286, and *Anderson v. Unisys Corp.*, 47 F.3d 302, 309 (8th Cir. 1995), the Eighth Circuit held that state law determined the commencement

7

of state law claims in federal court by supplemental jurisdiction.

A court in the Western District of Kentucky recently reached the same conclusion when plaintiff timely filed his § 1983 complaint with supplemental state claims in federal court, but did not issue summons until after the statute of limitations had expired. *French v. Daviess County, Kentucky*, No. 4:07-cv-105, 2009 WL 1766928, at *5 (W.D.Ky. June 23, 2009). Judge McKinley surveyed persuasive authority and determined that although federal Rule 3 governed when plaintiff's federal claims commenced, Kentucky law determined when plaintiff's supplemental state law commenced. *Id.* (citing *Sentry Corp. v. Harris*, 802 F.2d 229, 246 (7th Cir. 1986); *U.S. ex rel Conner v. Salina Reg'l Health Ctr.*, 543 F.3d 1211, 1225 (10th Cir. 2008); *Pollock v. City of Astoria*, No. CV06-845, 2007 WL 54804, at *2 (D.Or. Jan. 4, 2007); *Tillman v. Georgia*, 466 F.Supp.2d 1311, 1317 (S.D.Ga. 2006)).

Thus, the threshold question is whether Plaintiffs filed their Complaint *and* issued summonses before the one-year statute of limitations ran. They did not. Although the First Amended Complaint was filed within the applicable statutes of limitations, under Kentucky law the present action did not commence until summonses were issued on October 1, 2010 (Doc. # 47)—well after any applicable statutes of limitations had expired.[2]

---

[2] The parties distinguish between Plaintiff Bradford's personal claims and the Estate's claims. The parties agree that Plaintiff Bradford's personal claims accrued on May 31, 2009 when decedent was killed. The parties also agree that because May 31, 2010 was Memorial Day, under KRS § 446.030(1)(a), the statute of limitations was extended one day, and expired June 1, 2010.

Pursuant to KRS § 413.180 (as interpreted by *Connor v. George W. Whitesides, Co.*, 834 S.W.2d 652, 654 (Ky. 1992)), however, the Estate's claims did not accrue until the appointment of a personal representative. Because Valerie Bradford was appointed personal representative on June 23, 2009 the statute of limitations for the Estate's claims expired June 23, 2010. This distinction is immaterial to the disposition of the pending motions because under KRS § 413.250 and Kentucky Rule of Civil Procedure 3, this action was commenced October 1, 2010, when the summonses were issued.

## 2.    Federal Rule 15(c)(1)(C) Governs Relation Back

Plaintiffs argue that the First Amended Complaint adding the four new Defendants relates back to the filing of the original Complaint under Kentucky Rule of Civil Procedure (CR) 15.03 and, therefore, preserves Plaintiffs' state claims.    (Doc. # 61 at 3-4). Defendants respond that relation back is inappropriate under federal Rule 15(c).    (Doc. # 50 at 4; 64 at 1).[3]   Though the question is less than settled, the parties do not directly address whether the state or federal relation back rule applies or provide authority in support of the rule they rely upon.    Plaintiffs cite CR 15.03 but look to federal case law interpreting federal Rule 15(c) for guidance because "Kentucky has held that, the relevant part of CR 15.03 is identical to Federal Rules of Civil Procedure 15(c)." (Doc. # 61 at 3-4).

Federal Rule 15(c) directs the relation back analysis in this case.[4]  The Sixth Circuit faced a procedural and factual background similar to this one in *Force v. City of Memphis*, 101 F.3d 702, 1996 WL 665609 (6th Cir. Nov. 14, 1996) (Table).  There, the plaintiff filed a § 1983 action alleging constitutional violations and supplemental state law claims for assault, battery, false arrest, and negligence; the original complaint named the City of Memphis and "Several Unknown City of Memphis Police Officers."  *Id.* at *1.  Several

---

[3]  Defendants Beighle and Robb argue in their reply that even if the Court found that the Amended Complaint related back to the original Complaint it would not save Plaintiffs' state law claims "because Plaintiffs never issued any summons to the originally named defendants—and instead chose to seek waiver of service."  (Doc. # 62 at 2).  The Court need not address this argument because it concludes, as detailed later, that relation back is inappropriate in this case.

[4]  Though the Sixth Circuit has identified one difference between the federal and Kentucky rules, that distinction is not relevant here.  *See Pac. Emp'rs Ins. Co. v. Sav-A-Lot of Winchester*, 291 F.3d 392, 394, 400 (6th Cir. 2002) (observing that the Kentucky counterpart to Federal Rule 15(c) has not been amended to track the 1991 changes to the federal rule regarding when the added party must have notice.  The dispositive element in this case—the "mistake" element—is identical in both the federal and state rules.  Thus, the relation back analysis would be unaffected even if a reviewing court determined that the state, rather than federal, rule should be applied.

months after the statute of limitations expired, the plaintiff filed an amended complaint naming the officers. *Id.* The Sixth Circuit found that "[t]he relation back issue is controlled by Fed.R.Civ.P. 15(c)." *Id.* at *2.

A court in the Eastern District of Kentucky similarly held in a nearly identical situation to this one that federal Rule 15(c) applies to determine whether relation back was appropriate. "While the relevant state law, here Kentucky, provides the statute of limitations for both the § 1983 claims . . . and the pendent state law claims . . . Fed.R.Civ.P. 15(c) provides the procedure for relation back. *DeLong v. Arms*, 251 F.R.D. 253, 256 (E.D.Ky. 2008) (citing *Johansen v. E.I. DuPont De Nemours & Co.*, 810 F.2d 1377, 1380 (5th Cir. 1987)).[5] Thus, the Court will apply Rule 15(c)(1)(C) to determine whether the Plaintiffs' First Amended Complaint relates back to their original Complaint.

### 3. The State Law Claims in Plaintiffs' Amended Complaint Do Not Relate Back to the Original Complaint

Under Rule 15(c)(1)(C), Plaintiffs' First Amended Complaint relates back to the original Complaint if three requirements are satisfied: (1) the claims arose out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the Defendants to be added received such notice of the claim within 120 days of the filing of the original

---

[5] The Court in *DeLong* acknowledged that *Johansen* involved diversity jurisdiction, but nonetheless found its reasoning persuasive: The *Johansen* court held that "when a federal rule of civil procedure specifically covers a particular situation, a federal diversity court is required to apply the federal rule unless application of the federal rule violates the Rules Enabling Act or the Constitution." *DeLong*, 251 F.R.D. at 256 (quoting *Johansen*, 810 F.2d at 1380). Thus, "Rule 15(c) is a truly procedural rule because it governs the in-court dispute resolution process rather than the dispute that brought the parties into court; consequently, it does not transgress the Rules Enabling Act." *Id.* Similarly, the Sixth Court has held "that the question of whether an amendment relates back to the date of the original complaint is a question of federal procedure not controlled by state law even in a diversity case." *Simmons v. S. Cent. Skyworker's, Inc.*, 936 F.2d 268, 270 (6th Cir. 1991) (citing *Am. Bankers Ins. Co. of Fla. v. Colo. Flying Acad., Inc.*, 93 F.R.D. 135 (D.C.Colo. 1982)). *See also Lawson v. Techtronic Indus. N. Am., Inc.*, No. 5:08-cv-00093, 2010 WL 3909327, at *5 (W.D.Ky. 2010) (observing differences in the federal and Kentucky rule for relation back, but holding that federal Rule 15(c) is applicable in diversity cases).

complaint (July 20, 2009) that they would not be prejudiced in defending the suit; and (3) within 120 days of the filing of the original pleading, the added Defendants knew or should have known that the action would have been brought against them but for Plaintiffs' mistake concerning the identity of the proper party. *Black-Hosang v. Ohio Dep't of Pub. Safety*, 96 F.App'x 372, 374-75 (6th Cir. 2004). Because the First Amended Complaint arises out the same occurrence as the original Complaint—namely, the shooting incident on May 31, 2009—the first element is satisfied. *See Krupski v. Costa Crociere S.p.A.*, 130 S.Ct. 2485, 2492 (2010) (finding Rule 15(c)(1)(C)'s first element satisfied where the claim against the substituted defendant "clearly involved the same occurrence as the original claim").

The second and third elements are less clear. Defendants contend that Plaintiffs' Amended Complaint fails the third element of Rule 15(c)(1)(C) and thus does not relate back, because "Plaintiffs' asserted lack of knowledge about [Defendants'] identities does not satisfy the mistake prerequisite of Rule 15." (Doc. # 50 at 4). Plaintiffs rely on *Berndt v. Tenn.*, 796 F.2d 879 (6th Cir. 1986) to argue in response that Rule 15(c)(1)(C)'s second element, the notice requirement, can be satisfied by knowledge imputed to the new defendants. (Doc. # 61 at 5-6). Defendants reply that Plaintiffs ignore "the fact that they must satisfy *both* the notice and mistake requirements" of Rule 15(c)(1)(C) for the Amended Complaint to relate back. (Doc. # 62 at 1). Defendants are correct. Met with a strikingly similar argument, the Court in *Burdine v. Kaiser*, No. 3:09-cv-1026, 2010 WL 2606257, at *3 (N.D.Ohio June 25, 2010) reminded the plaintiffs that all three of Rule 15(c)(1)(C)'s elements must be satisfied for an amended pleading to relate back:

> Plaintiffs rely on an imputed knowledge exception to this rule, mentioned in *Cox*, and explained more thoroughly in *Berndt v. State of Tenn.*, 796 F.2d 879 (6th Cir. 1986). . . .

A distinction may be drawn, however, between the notice requirement of Rule 15(c)(1)(C)(I) and the mistake requirement of Rule 15(c)(1)(C)(ii). Even if the parties had notice that plaintiffs might sue them, adding them relates back only if they know that it was due to a mistake that they were not sued. The imputed knowledge doctrine does not therefore help plaintiffs maneuver around the statute of limitations for these defendants.

Because Rule 15(c)(1)(C)'s third element—the mistake requirement—is dispositive of Defendants' Motions to Dismiss, the Court need not decide whether the second element—the notice requirement—is satisfied.[6]

Plaintiffs' Amended Complaint does not relate back to their original Complaint because the Sixth Circuit has held that "[s]ubstituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties." *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). Because "such amendments do not satisfy the 'mistaken identity' requirement" of Rule 15(c)(1)(C), the court held that the amended complaint naming specific police officers did not relate back to the original complaint, which listed "unnamed police officers" of the City of Louisville and Kentucky State Police. *Id.* The Sixth Circuit applied *Cox* shortly thereafter in *Force*, 1996 WL 665609, at *1, *3, to hold that an amendment after the statute of limitations had run seeking to replace "Several Unknown City of Memphis Police Officers" in the original complaint with named officers would not

---

[6] The Court also reaches this conclusion because Plaintiffs have not addressed, and the record is not clear, whether Defendants had notice—actual or constructive—within the 120 days required by Rule 15(c)(1)(C)'s reference to Rule 4(m). Defendants, in turn, have not briefed the issue of notice, instead relying on their argument that Rule 15(c)(1)(C)'s mistake element is dispositive. *See Lawson* 2010 WL 3909327, at *6 (because parties' briefs assumed CR 15.03, rather than federal Rule 15(c), would apply, additional discovery and briefing was necessary for the court to decide whether the added defendant received notice of the action within the 120 days required by federal Rule 15(c)). Because the third element (mistake) is dispositive in this case, discovery on the second element (notice) is not necessary.

relate back under Rule 15(c).[7]  The Sixth Circuit more recently reaffirmed *Cox*'s continuing precedential value in an unpublished opinion holding that "a plaintiff's lack of knowledge pertaining to an intended defendant's identify does not constitute a 'mistake concerning the party's identity' within the meaning of Rule 15(c)."  *Moore v. Tenn.*, 267 F.App'x 450, 455 (6th Cir. 2008) (citing *Cox*, 75 F.3d at 240).  Thus, in *Moore,* when the plaintiff sought to amend her original § 1983 complaint to name the parties originally captioned, "Unknown Deputies," the court quoted *Cox* to conclude that Sixth Circuit "precedent is fatal to Moore's argument."  *Id.*

Subsequent decisions within the Eastern District of Kentucky and sister district courts in the Sixth Circuit have confirmed *Cox* and *Moore*'s continuing vitality.  In *DeLong*, 251 F.R.D. at 255, a court in the Eastern District of Kentucky found that an amended complaint naming Doe Defendants would not relate back to the original § 1983 complaint. The court reasoned that "the requirement of mistake concerning the identify of the proper party serves to bar relation back under Rule 15(c)" where the original complaint named Doe Defendants; this is a "situation not of mistake but of lack of knowledge about the proper party."  *Id.*  Another sister district court reached the same conclusion in *Stanley v. Malone*, No. 2:07-cv-694, 2009 WL 485491, at *4 (S.D.Ohio Feb. 26, 2009), holding that an amended complaint naming deputies would not relate back to the original complaint, which named "John Doe Deputies of the Licking County Sheriff's Office" because "[u]nder *Moore*, Plaintiffs' previous lack of knowledge as to precisely which LCSO officers were involved in

---

[7]  Plaintiffs' only reference to the mistake element of Rule 15(c) is a block quotation from the pre-*Cox* case, *Huron Valley Hosp., Inc. v. City of Pontiac*, 612 F.Supp. 654, 659 n.5 (E.D.Mich. 1985), in which the court observed that Rule 15(c) permits more than the mere correction of a misnomer.  This conclusion is not inconsistent with *Cox* and, lacking any analysis, does not address the substance of Defendants' argument or the facts of this case.

the search and seizure does not satisfy the mistaken identify requirement of Rule 15(c)(1)(C)(ii)." So, too, in *Burdine,* 2010 WL 2606257, at *1, *3, the court prohibited relation back to the original complaint which named "Fremont Police Officers" because plaintiffs "concede[d] that failure to add these parties earlier result[ed] from a lack of knowledge about their identities rather than a mistake."[8]

These and similar decisions by sister district courts within the Sixth Circuit persuade the Court that relation back is inappropriate here. *See, e.g., Ford v. Hill*, 874 F.Supp. 149, 151, 154 (E.D.Ky. 1995) (not permitting the amended complaint to relate back to the initial complaint which named "individuals (who are Kentucky State Troopers) whose identity is unknown to the Plaintiffs" because Rule 15(c)(1)(C)'s mistake requirement "applies only where there has been an error concerning the identity of the proper party rather than where, as here, there is a lack of knowledge of the proper party"); *Dye v. City of Warren*, 367 F.Supp.2d 1175, 1183 (N.D.Ohio 2005) (prohibiting amended complaint naming officers from relating back to original complaint, which listed "unnamed Warren police officers John Doe 1-5" because this did not satisfy Rule 15(c)(1)(C)'s mistake requirement); *Pierce v. Hamblen Cnty, Tenn.*, No 2:09-cv-34, 2009 WL 2996333, at *2 (E.D.Tenn. Sept.

---

[8] *Burdine,* 2010 WL 2606257, at *2 n.2, is also helpful because it distinguished the Supreme Court's recent decision interpreting Rule 15(c)(1)(C) from this case. In *Krupski v. Costa Crociere S.p.A*., 130 S.Ct. 2485, the Supreme Court found Rule 15(c)(1)(C)'s mistake prong satisfied where the plaintiff knew of two parties but sued the wrong one. As the *Burdine* court persuasively reasoned, the facts in *Burdine* and here are different from those in *Krupski* because plaintiffs' problem here is not that they knew the defendants' identifies and simply failed to sue the correct one. Rather, it is that the plaintiffs did not know the identities of the defendants. Thus, the amended complaint still suffers "from the defect that failure to sue within the limitations period was based on a lack of knowledge, which the Sixth Circuit holds is not a mistake" under Rule 15(c)(1)(C). *Burdine*, 2010 WL 2606257 at *2 n.2 (citing *Moore* and *Cox*). *See also Venezia v. 12th & Div. Props., LLC*, No. 3:09-cv-430, 2010 WL 3122787, at *4 (M.D.Tenn. Aug. 6, 2010) (considering *Krupski* then citing *Moore*, 267 F.App'x at 455, and *Cox* as good law for the principle that "[i]n the Sixth Circuit, lack of knowledge pertaining to an intended defendant's identity does not constitute a 'mistake concerning the party's identity' within the meaning of Rule 15(c)").

16, 2009) (any attempt to amend plaintiff's complaint to name unnamed officers would not relate back to original complaint, and would thus be barred by the statute of limitations); *Clark v. Oakland Cnty.*, No. 08-14824, 2010 WL 2891712, at *7-8 (E.D.Mich. July 22, 2010) (prohibiting, on reconsideration, an amended complaint naming an officer from relating back to the original complaint, which named John Doe Waterford Police officers, because such an amendment did not satisfy Rule 15(c)(1)(C)'s mistake requirement as interpreted by *Cox* and *Moore*); *Keen v. Justice*, No. 07-250, 2009 WL 649159 (E.D.Ky. March 10, 2009).

### 4.    The Statute of Limitations For State Law Claims Was Not Equitably Tolled by Filing an Amended Complaint

In *French*, 2009 WL 1766928, at *5, the court decided that although the plaintiff's federal claims were timely, the supplemental state claims were time barred because summonses were issued after the statute of limitations had expired. The court concluded: "Whether [plaintiff's] state law claims are timely will therefore depend upon whether the statute of limitations is tolled under Kentucky law upon filing a motion for leave to amend the complaint." *Id.* Similarly, here, because summonses were issued on August 27, 2010—well after the statute of limitations expired—Plaintiffs' state law claims will only be saved if Kentucky law tolled the statute of limitations sometime before summonses were issued.

As the plain language of KRS § 413.250 and CR 3 make clear, and as "[t]he Kentucky courts have consistently held," the statute of limitations "is not tolled until summons is issued." *Wm. H. McGee & Co. v. Liebherr Am., Inc.*, 789 F.Supp. 861, 866 n.1 (E.D.Ky. 1992). Thus, the Sixth Circuit has held that filing a complaint—which commences

15

an action under federal Rule 3—"does not operate as a tolling statute on state law claims brought in diversity actions." *Eades v. Clark Distrib. Co.*, 70 F.3d 441, 444 (6th Cir. 1995) (citing *Wm. H. McGee & Co.*, 789 F.Supp. at 866)).

Although the parties have not briefed this issue, the Court's independent research has not uncovered grounds permitting it, under Kentucky law, to equitably toll the statute of limitations simply because Plaintiffs moved to file an amended complaint within the statute of limitations.

In *Steadman v. Gentry*, 314 S.W.3d 760, 763 (Ky.App. 2010), the Kentucky Court of Appeals refused to equitably toll the statute of limitations where the plaintiff filed an amended complaint months before the statute of limitations expired, but failed to instruct the circuit clerk to issue summons until well after the statute of limitations expired. The court reasoned that unlike an original complaint—"to which the mandates of CR 4.01(1) apply and require the clerk to issue a summons 'forthwith' when a complaint is filed"—there is no comparable rule requiring the clerk to issue summons following the filing of an amended complaint. *Id.* Consequently, the court distinguished the case from *Nanny v. Smith*, 260 S.W.3d 815 (Ky. 2008), where the Kentucky Supreme Court equitably tolled the statute of limitations because the failure to issue summons was the result of a clerk's error in failing to follow CR 4.01(1)'s mandate. *Id.*

There is no evidence here that Plaintiffs (or their attorney) did "everything humanly possible to commence the actions" as did the attorney in *Hagy v. Allen*, 153 F.Supp. 302, 309 (D.C.Ky. 1957). The attorney there, after being unable gain access to the clerk's office on the final day of the statute of limitations, contacted the deputy clerk at home and took the added precaution of physically preparing the summons. *Id.* Nor is this, as the

Kentucky Supreme Court summarized after reviewing equitable tolling precedent, a case where the delay in issuing summons was beyond Plaintiffs' control or occurred notwithstanding Plaintiffs' due diligence . *Nanny v. Smith*, 260 S.W.3d 815, 817-18 (Ky. 2008) (citing *Prewitt v. Caudill*, 63 S.W.2d 954, 958-59 (Ky.App. 1933); *Ward v. Howard*, 197 S.W. 506, 510 (Ky.App. 1917); *Robertson v. Commonwealth*, 177 S.W.3d 789 (Ky. 2005)).

Plaintiffs neither requested the Court to equitably toll their state claims nor provided grounds to do so. Rather, Plaintiffs' untimely issuance of summonses, and thus untimely commencement of state claims, appears to be the result of a mistake or oversight. Thus, the advice of another judge in this district bears repeating:

> The court wishes to reiterate its warning to federal practitioners that in diversity cases, KY.R.CIV.P. 3.01, which provides that issuance of process in good faith in addition to filing the complaint is required for commencement of the action, is a trap for the unwary. A cursory reading of FED.R.CIV.P. 4(d) could lead an unwitting attorney down a primrose path to a malpractice suit if he or she is not constantly aware of the differences between the Kentucky and Federal Rules of Civil Procedure.

*Corporex Cos., LLC v. Proskauer Rose, LLP*, 713 F.Supp.2d 678, 688 (E.D.Ky. 2010).

One final matter requires brief comment. Plaintiffs' Amended Complaint lists "Bracken County Sheriff's Deputies, Names Unknown" and "Campbell County Police Officers, Names Unknown." Based on the Court's analysis, Plaintiffs could not later name these unnamed officers. Thus, for the foregoing reasons, the state law claims brought by Valerie Bradford and the Estate against Defendants Beighle, McDonald, Robb, Bracken County Sheriff's Deputies Names Unknown, and Campbell County Police Officers Names Unknown are dismissed.

**C.      The Statute of Limitations for Minor Plaintiff N.B.'s State Law Claims Was Tolled**

Plaintiff N.B. argues that the statute of limitations for his state law claim does not expire until one year after he reaches the age of majority.   KRS § 413.170(1) provides:

> If a person entitled to bring any action mentioned in KRS 413.090 to 413.160 . . . was, at the time the cause of action accrued, and infant . . . the action may be brought within the same number of years after the removal of the disability . . . allowed to a person without the disability to bring the action after the right accrued.

Defendants argue that, notwithstanding its plain language, KRS § 413.170(1) does not apply here because Plaintiff N.B. "elected to initiate litigation through his parent as Next Friend."   (Doc. # 50 at 5).   In support, Defendants emphasize *Tallman v. City of Elizabethtown*, No. 2006-CA-002542, 2007 WL 3227599, at *3 (Ky.App. Nov. 2, 2007), in which the court held that KRS § 413.170 did not apply because "the children's claims were prosecuted on their behalf by their mother, as guardian and next friend."   The Kentucky court offered no additional explanation.

Defendants acknowledge that two recent federal courts interpreting the same statute reached the opposite conclusion.   First, in *Martin v. Celadon Trucking Servs., Inc.*, No. 5:05-cv-00101, 2006 WL 181864, at *2 (W.D.Ky. Jan. 17, 2006), the court found that "[t]he appointment of a guardian did not alter" the right provided by KRS § 413.170.   The court contrasted KRS § 342.210, which expressly provides that in a workers' compensation claim the statute of limitations begins to run on the appointment of a guardian, with KRS § 413.170, which includes no such language.   *Id.*   Consequently, the court "rule[d] that the appointment of a guardian did not remove" the disability of being a minor.   *Id.*

Defendants argue that *Martin* does not address the specific facts here, where the minor initiated an action "by a Next Friend against certain defendants within the normal limitations period, and then later against other defendants." (Doc. # 50 at 5-6). Defendants also contend that "the paternalistic premise underlying such a tolling statute (i.e., that a minor is not capable or sophisticated [enough] to act on their rights) is simply not present when the next friend procedure is utilized." (Doc. # 62 at 3). Absent any authority lending this factual distinction or policy argument dispositive weight, the Court follows *Martin*'s lead in applying the plain language of the statute.

This conclusion finds support in *T.S. v. Doe*, No. 5:10-cv-217, 2010 WL 3941868, at *2-4 (E.D.Ky. Oct. 6, 2010), which rejected an argument similar to Defendants'. The defendants there relied on *Tallman* to argue "that the benefit of KRS § 413.170 is lost once a minor proceeds in a lawsuit by Next Friend." *Id.* at *3. The court reviewed analogous case law, observed that the *Tallman* court reached its decision without supporting authority or discussion, and concluded that KRS § 413.170's savings provision, unlike KRS § 342.210, "has no exceptions for a committee, guardian or next friend." *Id.* at *4. Defendants do not address *T.S.*'s rationale or attempt to distinguish it.

Absent direct state precedent on the issue, the Court is left to "anticipate how the relevant state's highest court would rule in the case." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008) (quoting *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)). Because "Defendant[s'] interpretation would require this Court to add an exception to the statute that the legislature did not provide," the Court concludes that KRS § 413.170 tolled Plaintiff N.B.'s state law claim. *T.S.*, 2010 WL 391868, at *4.

**D.    McDonald is Dismissed as a Party Defendant Because Plaintiffs Failed to Timely Execute Service**

Defendant McDonald[9] moves the Court to dismiss him as a Defendant in this action because service was not executed upon him within one-hundred twenty (120) days of the Amended Complaint being filed, as required by Rule 4(m), which provides in relevant part:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Defendant McDonald argues that the Amended Complaint was filed June 10, 2010 (Doc. # 26) but that service was not executed until October 27, 2010 (Doc. # 57-1 at 2, 5)—more than 120 days later.

Rule 4(m)'s first sentence gives the Court discretion to dismiss the action or allow Plaintiffs additional time—the court "must dismiss the action . . . *or* order that service be made within a specified time." (emphasis added).  The Rule's second sentence eliminates the Court's discretion where good cause is shown—if the Plaintiffs show "good cause for the failure, the court *must* extend the time for service for an appropriate period." (emphasis added).  Thus, the Court must first determine whether there is good cause for Plaintiffs' failure to timely execute service.  If not, the Court must determine in its discretion whether to dismiss the action or allow Plaintiffs additional time.  *See Stewart v. Tenn. Valley Auth.*, 238 F.3d 424, 2000 WL 1785749, at *1 (6th Cir. 2000) (Table) (explaining that "Rule 4(m)

---

[9] Plaintiffs contend that "service was completed upon Defendants Robb and Beighle within the 120 day time period."  (Doc. # 61 at 10).  Defendants Robb and Beighle agree that "it appears that Plaintiffs effected service on the 120th day following June 10, 2010" (October 8, 2010) but reserved the defense of failure to timely serve summons if discovery establishes service was not timely executed.  (Doc. # 53 at 2-3).

requires the district court to undertake a two-part analysis" in which the court shall extend the time for service if plaintiff shows good cause, but allowing the court in its discretion to extend time for service even if no good cause is shown).

Plaintiffs bear the burden of showing good cause under Rule 4(m). *Habib v. Gen. Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994); *Williams v. Vogelpohl*, 181 F.3d 106, 1999 WL 96748, at *2 (6th Cir. 1999) (Table). The only reason Plaintiffs give[10] for failing to timely execute service was that they requested waiver of service "[t]o keep costs down and to provide [Defendants] the courtesy for the additional time to answer." (Doc. # 61 at 11). Plaintiffs also observe that "[i]mmediately upon the expiration of time period for the waivers[,] [they] requested the clerk to issue summons on October 1, 2010, some two weeks prior to the expiration of the 120 day period." (Doc. # 61 at 11).

Defendant McDonald replies that Plaintiffs' reasons are inadequate. He first notes that request for waiver of service was sent more than two months after the Amended Complaint was filed, which "indicates that the intentional decision was made by Plaintiffs to delay issuance of the summons and/or any attempt to serve that summons." (Doc. # 64 at 2). McDonald also points out that a Clerk's note was entered in the docket on June 11, 2010 (the day after the Amended Complaint was filed), notifying the parties that no summons were provided to the Clerk for issuance. If you desire summons to be issued,

---

[10] Plaintiffs' primary argument actually is: "The rules and case law do not provide as the Defendant claims that service be 'executed' upon a defendant within the 120 day period, the rule and case law only requires that the defendant receive 'notice.'" (Doc. # 61 at 10). In support, Plaintiffs quote a Sixth Circuit opinion interpreting Rule 15(c)'s notice element: "Rule 15, it is true, requires that defendants receive notice of the suit 'within the period provided by Rule 4(m) for serving the summons and complaint,' and Rule 4(m) generally requires service 'within 120 days after the filing of the complaint.'" *Jackson v. Herrington*, No. 08-5613, 2010 WL 3398900, at *4 (6th Cir. Aug. 31,2010) (citing *Krupski v. Costa Crociere S.p.A.*, 130 S.Ct. 2485, 2493 (2010)). *Jackson* incorporated Rule 4(m)'s good cause provision into Rule 15(c)'s notice requirement but did not hold, as Plaintiffs contend, that Rule 4(m) "only requires that the defendant receive 'notice.'" *Id.*

the forms are available on the Court's website." (Doc. # 57-1 at 2). Finally, McDonald notes that he was required to retain independent counsel who had to get caught up to speed on a lawsuit that had been pending for well over a year. (Doc. # 64 at 3).

McDonald is correct that requesting, but not receiving, waiver of service does not satisfy Rule 4(m)'s good cause standard. Though Rule 4(m) does not define good cause, the Sixth Circuit has required "at least excusable neglect." *Stewart*, 2000 WL 1785749, at *1; *but see United States v. McLaughlin*, 470 F.3d 698, 700 (7th Cir. 2006) (determining that excusable neglect is a "less generous [standard] to dawdlers" than good cause and is, therefore, an inappropriate standard).[11] "Neglect exists where the failure to do something occurred because of a simple, faultless omission to act, or because of a party's carelessness." *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388 (1993)). "[W]hether a case of neglect was excusable is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* (quoting *Pioneer*, 507 U.S. at 395). These considerations include "the danger of prejudice to the [non-moving party], the length of delay and its impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant and whether the movant acted in good faith." *Id.*

In *Turner*, the Sixth Circuit applied this standard to reject, as excusable neglect, counsel's argument that he presumed from earlier dealings, without confirming, that defense counsel would informally accept service. *Id.* at 650-51. The court reminded

---

[11] The Court need not reconcile these competing standards because, as the caselaw cited herein interpreting the good cause standard makes clear, Plaintiffs fail under both.

practitioners that "[t]he excusable neglect standard has consistently been held to be strict, and can be met only in extraordinary cases." *Id.* at 650 (citing *Marsh v. Richardson*, 873 F.2d 129, 130 (6th Cir. 1989)). The Sixth Circuit concluded that if it overturned the lower court's finding of no excusable neglect in these circumstances, "then it is unclear how the 120 day service rule ever could be enforced." *Id.* at 651.

Though Plaintiffs bear the burden of showing good cause, they have cited no authority to suggest that Defendant's refusal to waive service, which resulted in untimely execution of service, satisfies Rule 4(m)'s standard. To the contrary, "federal courts have held that good cause has not been shown in a large number of cases and have rejected excuses based on a failure to receive a waiver of formal service." 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137 (3d. ed.). The Court's independent review of relevant case law confirms this conclusion. *See Khorozian v. McCullough*, 186 F.R.D. 325, 329-30 (D.N.J. 1999) (holding good cause not shown where the only reason for failing to comply with Rule 4(m) was that plaintiffs attempted to secure a waiver of service); *see also*, *Cooley v. Cornell Corrections*, 220 F.R.D. 171, 172 (D.R.I. 2004); *United States v. Britt*, 170 F.R.D. 8, 9-10 (D.Md. 1996); *Vander Linden v. Wilbanks*, 128 F.Supp.2d 900, 904-05 (D.S.C. 2000); *Sikes v. City of Dothan*, No. 1:05-cv-46, 2005 WL 1523555, at * 2 (W.D.Ala. June 27, 2005). Absent Sixth Circuit precedent on the issue, the Court finds these district court opinions persuasive.

Moreover, federal courts have considered whether a plaintiff was warned of Rule 4(m)'s strictures in considering whether failure to timely execute service was for "good cause." *See, e.g.*, *Piccone v. Moatz*, 136 F.Supp.2d 525, 529 (E.D.Va. 2001) (in finding no good cause for plaintiff's failure to comply with Rule 4(m), court observed that it gave

plaintiff a "clear warning" to serve defendants); *Barrett v. City of Allentown*, 152 F.R.D. 46, 49 (E.D.Pa. 1993) (same). Though this Court did not expressly warn Plaintiffs to timely execute service, they were not without adequate reminders. As McDonald points out, the Clerk of Courts entered a note on the docket after the Amended Complaint was filed explaining that summonses were not provided to the Clerk and informing Plaintiffs how to proceed if they wanted summonses to issue.

Additionally, the Advisory Committee Notes to the 1993 Amendments to Rule 4(d) (providing for waiver of service of process) warn plaintiffs to be aware of Rule 4(m)'s requirements in seeking waiver of service: "The procedure of requesting waiver of service should also not be used if the time for service under subdivision (m) will expire before the date on which the waiver must be returned." The Notes reflect courts' discretion in applying Rule 4(m), stating that while at least one court has allowed additional time to execute service, courts could also "refuse a request for additional time unless the defendant appears to have evaded service." Similarly, *Federal Practice and Procedure* advises plaintiffs "to be wary of consuming too much of the 120 days pursuing a waiver of formal service" because it may make compliance with Rule 4(m) difficult or impossible. 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137 (3d. ed.). For these reasons, the Court finds that Plaintiffs have shown neither good cause nor excusable neglect for their failure to comply with Rule 4(m)'s requirements regarding McDonald.

Though Plaintiffs have not shown good cause or excusable neglect for delay, Rule 4(m) "permits a district court to enlarge the time for service 'even' if there is no good cause shown.'" *Henderson v. United States*, 517 U.S. 654, 658 n.5 (quoting Advisory Committee's

Notes on 1993 Amendments to Fed. Rule Civ. Proc. 4); *Stewart,* 2000 WL 1785749, at *1 (6th Cir. 2000) (citing *Henderson* for the rule that "the court has discretion to permit late service even absent a showing of good cause). Although Rule 4(m) requires dismissal *without* prejudice, all Plaintiffs' claims are subject to a one-year statute of limitations, which has expired. Thus, dismissal without prejudice "is of little practical relevance given the fact that even if [Plaintiffs] were permitted to re-file [their] claim today, [they] would be barred by the applicable statute of limitations." *Petty v. Cnty of Franklin, Ohio*, 478 F.3d 341, 346 n.3 (6th Cir. 2007) (citing 3 Moore's Federal Practice § 4.82[3] for the proposition that "any dismissal ordered under Rule 4(m) after expiration of the statute of limitations for failure to establish good cause will be, in effect, with prejudice since plaintiff will be precluded from commencing a new action").

The Advisory Committee's Notes to the 1993 Amendments to Rule 4(m) contemplate that relief for failure to effect service within 120 days "may be justified, for example, if the applicable statute of limitations would bar the refiled action." Other courts have allowed parties additional time to execute service where dismissal under Rule 4(m) would effectively be with prejudice because the statute of limitation had expired. *See, e.g.*, *Turner v. Ky. Transp. Cabinet*, No. 3:10-cv-39, 2010 WL 5014516, at *4 (E.D.Ky. Dec. 3, 2010) (allowing brief extension of 120 days even though plaintiff waited until the last moment to attempt to serve defendant because of "the likelihood that any dismissal for failure to complete service could prevent resolution of" plaintiff's claim on the merits). Other courts have held just the opposite. In *DeLong v. Arms*, 251 F.R.D. 253, 255 (E.D.Ky. 2008), the court recognized that plaintiffs' action would be time barred if dismissed, but determined that plaintiffs' "mere oversight" in failing to execute service within 120 days did not merit the

court's discretion to save the claim.

Courts have also reached contrary conclusions when faced with the same explanation as Plaintiffs have put forward here. In *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998), the plaintiff mailed a waiver of service form but, when it went unreturned, failed to timely execute service. The Seventh Circuit upheld the district court's refusal to exercise its Rule 4(m) discretion to grant plaintiff additional time, even though dismissal would effectively be with prejudice, because the statute of limitations had expired. *Id.* The court concluded that "[p]erhaps this case will serve as a warning to lawyers to watch the time that has elapsed after they mail out a waiver form and to act promptly thereafter if the defendant proves uncooperative." *Id. But see AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 109-10 (S.D.N.Y. 2000) (finding no good cause for failure to timely execute service because plaintiffs had sought waiver of service, but invoking its discretion to grant additional time where dismissal would bar the action because the statute of limitations had expired).

Turning to the present case, the Court directs Plaintiffs to *Turner v. Grant Cnty Det. Ctr.*, No. 05-cv-148, 2007 WL 1433930, at *1 (E.D.Ky. May 10, 2007) wherein plaintiffs urged this Court to reconsider its decision dismissing certain defendants for failure to timely serve process as required by Rule 4(m). There, plaintiffs emphasized that dismissal would be highly prejudicial because their claims would be barred by the statute of limitations. *Id.* And, unlike Plaintiffs here, the *Turner* plaintiffs explained that their failure was due to a mistaken belief that Rule 4(m) prohibited them from executing service while a dismissal motion was pending. *Id.* Finding "nothing compelling about these circumstances that would warrant extending time for Plaintiffs to complete service of process," this Court

26

dismissed the defendants that had not been timely served.  *Id.* at *2.

Similarly, Plaintiffs Valerie Bradford and N.B. have not offered a compelling reason to warrant extending the time to execute service.[12]  Plaintiffs have not explained why McDonald was the only Defendant who was untimely served, or articulated the steps taken to ensure that McDonald was timely served.  As this Court held in *Turner*, merely being time-barred from refiling an action is not, on its own, necessarily a compelling reason to extend the time to execute service.  But unlike *Turner* (and much of the case law cited above) it is unlikely that Rule 4(m) dismissal of McDonald would be fatal to Plaintiffs' attempt to recover damages because other Defendants will remain parties to the action. Indeed, Plaintiffs have not suggested that Defendant McDonald played a central role in the events of May 31, 2009 or even that they would be prejudiced by McDonald's dismissal. Absent good cause, excusable neglect, or a reason for this Court to exercise its discretion in their favor, Plaintiffs' claims against McDonald are dismissed.

## III.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

1.      Defendants Beighle and Robb's Motions to Dismiss (Docs. # 50, 53) are

---

[12]  The Court is aware that district courts have considered various combinations of the following factors in determining whether to exercise their discretion to extend the time to execute service: whether and how the plaintiff would be prejudiced by dismissal; whether and when defendant had notice so he would not be surprised; whether an extension would serve the overall policy of resolving disputes on the merits; whether defendant would be prejudiced by an extension; and plaintiff's effort at executing service.  *See, e.g., Vergis v. Grand Victoria Casino & Resort*, 199 F.R.D. 216, 218 (S.D.Ohio 2000); *Rosch v. Browning Masonic Cmty, Inc.*, No. 3:07-cv-3665, 2008 WL 2365017, at *2 (N.D.Ohio June 5, 2008).  This list is not exhaustive and the weight to be given to these and other relevant factors varies from case to case.  *Turner v. Ky. Transp. Cabinet*, No. 3:10-cv-39, 2010 WL 5014516, at *3 (E.D.Ky. Dec. 3, 2010).  The parties have not listed or advocated any combination of factors, and the record is insufficiently developed to apply many of the factors.  For example, it is unclear when McDonald learned of this action, the extent to which he was prejudiced by joining litigation more than a year after it commenced, what steps (if any) Plaintiffs took to ensure timely service, and, perhaps most importantly, McDonald's significance to Plaintiffs' claims.  Thus, the Court's decision declining to extend the time to execute service is the result of balancing and applying the factors applicable to this case.

**GRANTED** as to Plaintiffs Valerie Bradford's and the Estate's state law claims, and **DENIED** as to Plaintiff N.B.'s state law claim.

2.   Plaintiffs Valerie Bradford's and the Estate's state law claims against Defendants Beighle, Robb, Bracken County Sheriff's Deputies Names Unknown, and Campbell County Police Officers Names Unknown are **DISMISSED**.   Plaintiff N.B.'s state law claim against these Defendants remain.

3.   Defendant McDonald's Motion to Dismiss (Doc. # 57) is **GRANTED** and he is **DISMISSED** as a party Defendant.

4.   Consistent with the Court's December 7, 2010 Order (Doc. # 63), this matter is referred to Magistrate Judge Wehrman to issue a revised scheduling order.

This 14th day of January, 2011.



Signed By:

*David L. Bunning*

United States District Judge